**UNITED STATES of America**

**v.**

**ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES, AND IMPROVEMENTS, KNOWN as 147 DIVISION STREET, LOCATED IN the CITY OF WOONSOCKET, RHODE ISLAND.**

Civ. A. No. 87–0203 P.

United States District Court,
D. Rhode Island.

Jan. 14, 1988.

police search in these proceedings because he failed to do so at his prior criminal trial.

## INTRODUCTION

This case involves a forfeiture proceeding pursuant to 21 U.S.C. § 881(a)(7), which provides for the forfeiture to the United States of all real property which is used to facilitate, among other things, the illegal possession and distribution of a controlled substance.

On July 1, 1986, at approximately 9:35 p.m., members of the Woonsocket police department, pursuant to a search warrant issued by a Rhode Island state district judge, entered the premises of 147 Division Street, Woonsocket, Rhode Island, and siezed over 300 grams of cocaine. On November 12, 1987, Paul Latraverse, record owner of the premises at the time of the search, was convicted in United States District Court for possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). Latraverse did not challenge the legality of the July search at any time during the criminal proceeding.[1]

On April 14, 1987, the government filed a Complaint for Forfeiture in Rem of the Division Street property. The following day, a United States Magistrate ordered federal marshals to arrest, attach, and retain the premises until further order of the court and to give notice to all persons claiming the premises who may have cause to challenge the forfeiture.

Michael P. Iannotti, Asst. U.S. Atty., Providence, R.I., for plaintiff.

John Baccari, Wakefield, R.I., Douglas A. Giron, Providence, R.I., for respondent.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The motions presently before this Court present the question of whether this Court should set aside a United States Magistrate's order striking Paul Latraverse from the instant civil forfeiture proceedings and, if so, whether Latraverse is collaterally estopped from challenging the legality of a

On May 1, 1987, Latraverse filed a Notice of Claim, stating that although he had conveyed the premises to his daughter, Jacqueline Price, on July 12, 1986, he had been record owner of the premises for the previous eleven years and demanded the right to challenge the forfeiture. Jacqueline Price filed a similar Notice on May 4, 1987.

On May 26, 1987, the government filed a motion with the Magistrate requesting that Latraverse's Notice of Claim be stricken for failure to comply with Rule C(6) of the Supplemental Rules for Certain Admiralty

---

1. More precisely, Latraverse's counsel filed a pre-trial suppression motion but withdrew it before it had been considered.

and Maritime Claims.[2] Latraverse did not file an objection to the motion and the Magistrate granted the motion pursuant to D.R.I.Loc.R. 12(a)(2), which provides that "[i]f no response to a motion is served and filed, the court may make such orders as are just; including an order that the motion is unopposed and in the discretion of the court is deemed granted."

■ On October 8, 1987, Price and Latraverse filed a joint motion to suppress the evidence obtained as a result of the July search.[3] This Court conducted a hearing on the motion on November 6, 1987 and concluded, in an opinion rendered from the bench, that Price did not have a legitimate expectation of privacy in the premises at the time of the search and therefore could not challenge the validity of the search. This Court also noted in passing that Latraverse, as a result of the Magistrate's ruling, was no longer a party to the proceedings and was also precluded from attacking the search.

Latraverse then requested that this Court reconsider and set aside the Magistrate's order striking him from the proceedings. He argued that he did not respond to the government's motion to strike because he believed that the government's position was that the July 12 transfer to Jacqueline Price was valid and that Latraverse no longer had an interest in the property at the time the forfeiture proceedings were instituted; it was only after receiving the government's points and arguments objecting to the suppression motion did he learn that the government was going to attack the validity of the transfer. This Court reserved judgement and Latraverse subsequently filed his motion with supporting papers. The government objects to the motion and argues that even if this Court decides to set aside the Magistrate's order, Latraverse is collaterally estopped from challenging the July search because he failed to do so at his former criminal trial.

## DISCUSSION

### A. *The Magistrate's Ruling Granting the Government's Motion to Strike Latraverse's Notice of Claim*

The Magistrate's order striking Latraverse's Notice of Claim became the order of this Court when Latraverse failed to object within the ten-day period prescribed by D.R.I.Loc.R. 32(c)(3). Because the order had the effect of completely extinguishing Latraverse's defense[4] to the forfeiture action, this Court shall treat the order as an entry of default and consider Latraverse's motion for reconsideration under the "good cause" standard of Fed.R.Civ.P. 55(c).[5]

2. With few exceptions not apparently relevant here, seizure of property under 21 U.S.C. § 881 is governed by the Supplemental Rules for Certain Admiralty and Maritime Claims. 21 U.S.C. § 881(b).

   Rule C(6) provides, in pertinent part: "The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action."

3. The federal forfeiture provision authorizes the Attorney General to seize property which he has probable cause to believe was used to facilitate the transportation, concealment, or possession of a prohibited substance. *Application of Kingsley*, 614 F.Supp. 219, 224 (D.Mass.1985), *appeal dismissed*, 802 F.2d 571 (1st Cir.1986). It is long been held, however, that "evidence derived from a search in violation of the fourth amendment must be excluded from the forfeiture proceeding." *U.S. v. One 1978 Mercedez Benz Four-Door Sedan*, 711 F.2d 1297, 1303 (5th Cir.1983). In other words, tainted evidence may not support the necessary probable cause. *Vance v. U.S.*, 676 F.2d 183, 188 (5th Cir.1982).

4. Under the Admiralty and Maritime Rules, the filing of a claim is a prerequisite to "defend[ing] the action." Supp.R.Adm. & Mar.Cl. C(6).

5. Rule 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgement by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

   This Court has elected to characterize the Magistrate's order as an "entry of default" for three reasons. First, striking the Notice of Claim completely prevents Latraverse from defending the forfeiture action. *See supra* note 4. Second, the Magistrate's order is indisputably more than an interlocutory decision that impairs but does not completely eliminate a defense or claim. *See Greene v. Union Mut. Life Ins. Co. of America*, 764 F.2d 19, 22 (1st Cir. 1985). Third, there was no final judgement entered pursuant to the requirements of Fed.R. Civ.P. 55(b) or (c). *See Greene, supra*, 764 F.2d at 22.

It has long been settled that the decision to set aside an entry of default for failure to respond to a motion is in the sound discretion of the trial court judge. *Smith & Wesson v. U.S.*, 782 F.2d 1074, 1083 (1st Cir.1986). In this circuit, a trial court is free to set aside a default if the party presents a good reason for the default and the existence of a meritorious defense. *American & Foreign Insurance Association v. Commercial Ins. Co.*, 575 F.2d 980, 983 (1st Cir.1978). Equally settled is the proposition that default judgements are not favored by the federal courts, *Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc.*, 107 F.R.D. 665, 670 (S.D.Fla.1985), and all doubts are to be resolved in favor of the party seeking relief from judgement to facilitate resolution of disputes on their merits. *Sony Corp. v. S.W.I. Trading Corp., Inc.*, 104 F.R.D. 535, 539–40 (S.D.N.Y.1985).

This Court believes that Latraverse has provided a sufficiently compelling reason for why he failed to respond to the government's motion. Understanding the government's position to be that his daughter, Jacqueline Price, was the true owner of the property by operation of the July 12 transfer, he refrained from pursuing what he perceived was a futile challenge to the government's Motion to Strike and reposed in the belief that his daughter could and would capably contest the forfeiture. It was not until the government had responded to the suppression motion at the November hearing did Latraverse discover that the government's position was that the transfer was invalid because of a defective deed and that he alone had standing to challenge the forfeiture.[6] Far from being a case of willful and culpable disregard for the judicial process, which would certainly merit the entry of default, *see Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir.1984), the dilemma in which Latraverse now finds himself is the result of an understandable confusion concerning the nature of his interest in the property at the time forfeiture proceedings were instituted.[7]

This Court also believes that Latraverse has shown the existence of a meritorious defense. "The concern underlying the requirement that a party moving to set aside a default must show the existence of a meritorious defense is to determine whether there is *some possibility* that the suit will have an outcome different from the result achieved by the default." *Phillips v. Weiner*, 103 F.R.D. 177, 181 (D.Me.1984). Latraverse has argued that the evidence seized from the premises was unlawfully obtained. According to the government's Complaint for Forfeiture In Rem, this evidence is all that supports the necessary probable cause to believe that the property was used to facilitate the concealment or possession of a controlled substance. Because the probable cause can not be supported by unlawfully obtained evidence, *see supra* note 3, it is indisputable that proof of this defense may affect the outcome of these proceedings.

COUNSEL: Absolutely correct.

---

This Court notes that because Latraverse's claim was stricken by operation of Local Rule 12(a)(2), an alternative means of considering the present motion exists under Local Rule 51, which states that "[a]ny of the foregoing Rules shall be subject to such modification by any judge of this court as may be necessary to meet emergencies or to avoid injustice and great hardship."

6. The following exchange occurred between the Court and the government attorney at the November hearing:

THE COURT: I want this very clearly understood; let's not have any confusion. What you are saying now is that he [Latraverse] was record owner on July 1 or July 10, whatever the date was, and that at that time he did indeed have an expectation of privacy in the real estate.

7. This is not to suggest that the government actively misled Latraverse. In fact, whatever the government's position concerning who owned the property, the fact is that under the forfeiture statute, all right, title, and interest in the property vests in the United States "upon commission of the act giving rise to forfeiture." 21 U.S.C. § 881(h). In other words, "no third party can acquire a legally recognizable interest in the property after the activity that subjects it to forfeiture." *U.S. v. One Piece of Real Estate, Described in Part as: 1314 Whiterock and Improvements*, 571 F.Supp. 723, 725 (W.D.Tex. 1983).

Accordingly, the Magistrate's order striking Latraverse's Notice of Claim is hereby set aside and Latraverse is reinstated as a party to these proceedings. While under different circumstances this Court might have ruled that Latraverse must now respond to the government's Motion to Strike, it seems unnecessary and wasteful to return these proceedings to square one. The defect in Latraverse's Notice appears to be that it was not "verified on oath or affirmation" as required by Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Because this omission is one of form rather than substance, and because the government has conceded that Latraverse was the record owner of the premises at the time of the July search, *see supra* note 6, this Court can see no reason why this case should not proceed as if the Notice of Claim, as it now stands, is valid.

## B. *Latraverse's Ability to Challenge the July Search*

The government contends that because Latraverse did not challenge the introduction of the evidence obtained as a result of the July search at his criminal trial, "he implied ... at trial that the evidence was seized legally and his challenge to the introduction of the evidence in this forfeiture proceeding is now precluded under the doctrine of collateral estoppel."[8]

The Restatement of Judgements explains the rule of issue preclusion—otherwise known as collateral estoppel—as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 (1982); *see also National Labor Relations Board v. Donna–Lee Sportswear Co, Inc.*, 836 F.2d 31, at 33–34 (1st Cir.1987).

The government argues that the requirement that the issue be "actually litigated" is satisfied when, as in this case, the party

to the former proceeding had an opportunity and sufficient motivation to litigate the issue but failed to do so. It cites one case, *Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir.1984), which it alleges supports this position. This Court believes, however, that *Guenther* does not come close to addressing the issue presented by the facts of the present case. There, Guenther was arrested for disorderly conduct. At his state trial, Guenther argued that the arresting officer lacked probable cause and moved, unsuccessfully, to dismiss the charge. Guenther was subsequently acquitted and filed a civil rights action against the arresting officer. The trial court ruled that Guenther was collaterally estopped from litigating the issue of probable cause. There, however, as the court of appeals observed in affirming the trial court's ruling, the issue of probable cause and the integrity of the arrest was actually litigated at a state preliminary hearing. In fact, "Guenther requested and received a much more extensive and probing hearing than required by [state] law or the fourth amendment." *Id.* at 886.

This Court finds that a recent first circuit opinion, *B.C.R. Transport Co., Inc. v. Fontaine*, 727 F.2d 7 (1st Cir.1984), is controlling authority for the present case. In *Fontaine*, Richard Restivo was arrested, tried, and convicted of unlawful possession of a firearm. Restivo had argued at his suppression hearing that the firearm seized as a result of a search of his home was outside the scope of the warrant. No other fourth amendment issue was raised.

Restivo subsequently brought a civil rights action against the arresting officers, alleging that the search and seizure was conducted without probable cause. The officers argued that Restivo was collaterally estopped from bringing the action "since he failed to challenge the underlying probable cause for the search warrant at a prior suppression hearing." *Id.* at 11. The trial court rejected the officers' argument and the court of appeals affirmed. Observing that the doctrine of collateral estoppel ap-

---

8. Brief for United States, page 695.

plies "once an issue is *actually* and *necessarily* determined by a court," *id.* (emphasis in original), the panel held that "[s]ince there is no dispute that Restivo never litigated the issue of probable cause for the warrants at his suppression hearing, we are of the view that collateral estoppel does not bar Restivo's section 1983 action." *Id.* *Fontaine* is substantially in accord with cases in other circuits. *See, e.g., Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 197 (6th Cir.1987) (collateral estoppel does not apply in civil rights action following state conviction where "neither the validity of the summons nor the legality of the arrest was litigated or decided in the prior state court proceeding"); *Bailey v. Andrews,* 811 F.2d 366, 370 (7th Cir.1987) (collateral estoppel inapplicable where issues litigated at prior suppression hearing were not the same as those sought to be litigated in subsequent civil rights claim).

■ This Court recognizes that, unlike the instant case, *Fontaine, Vinson,* and *Bailey* involved civil rights actions that followed state criminal convictions. It is conceded that at one time a plausible argument could have been made that collateral estoppel doctrine developed in section 1983 litigation, because of the legitimate concern for permitting litigants to vindicate their constitutional rights in federal courts, should not be applied in other contexts. The Supreme Court, however, has rejected this argument and this Court can conceive of no other reason why these cases should not govern the instant one. *See Allen v. McCurry,* 449 U.S. 90, 103, 101 S.Ct. 411, 419, 66 L.Ed.2d 308 (1980) (dismissing the contention that collateral estoppel should be any different in the context of section 1983 litigation and finding unsupportable the proposition "that every person assert-

ing a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court").[9]

Nor does this Court believe that the purposes undergirding the doctrine of issue preclusion would be frustrated if the doctrine is not applied to prevent Latraverse from challenging the search. As the Supreme Court has stated, issue preclusion "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party ... and of promoting judicial economy by preventing needless litigation." *U.S. v. Mendoza,* 464 U.S. 154, 159, 104 S.Ct. 568, 572, 78 L.Ed.2d 379 (1983). Where, as here, the government has not actually litigated the propriety of the search in the prior action, it can not now complain that it is being burdened by duplicative effort. *See* Restatement (Second) of Judgments § 27, comm. e. (1982) ("The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harrassment of the adverse party are less compelling when the issue on which preclusion has been sought has not actually been litigated.").

Moreover, while it is true that preclusion doctrine encourages faith in the judicial process by preventing inconsistent decisions, *U.S. v. Stauffer Chemical Co.,* 464 U.S. 165, 176–77, 104 S.Ct. 575, 581, 78 L.Ed.2d 388 (1983) (White, J., concurring), apparent consistency must not eclipse actual fairness. Due process requires at least that a person's evidence and arguments be considered before a decree on the matter is enforced against him. *Blonder–Tongue Lab. v. Univ. of Ill. Found.,* 402 U.S. 313, 330, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). Finally, this Court does not envision federal criminal defendants withhold-

9. Cases which stand for the proposition that a litigant is precluded in a subsequent section 1983 action from raising issues which he could have litigated in the earlier state proceeding all involve the related doctrine of "claim preclusion" and are therefore inapplicable to the instant case. *See, e.g., Migra v. Warren City School Dist. Bd of Ed.,* 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1983); *Isaac v. Schwartz,* 706 F.2d 15, 17 (1st Cir.1983). Under the doctrine of claim preclusion, "a final judg-

ment on the merits of an action precludes the parties or their privies from relitigating issues *that were or could have been raised* in [the prior] action." *Allen, supra,* 449 U.S. at 94, 101 S.Ct. at 414; *see also Brown v. Felsen,* 442 U.S. 127, 140 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979) ("Whereas [claim preclusion] forecloses all that which might have been litigated previously, [issue preclusion] treats as final only those questions actually and necessarily decided in a prior suit.").

ing challenges to possibly unlawful police conduct so that they may later take a second bite at the apple during the forfeiture proceeding. The risk of a criminal conviction is suitable pressure upon the defendant to raise every possible defense. *Allen,* 449 U.S. at 104 n. 23, 101 S.Ct. at 420 n. 23.

Although it was not raised by the government, this Court notes that some courts have held that a defendant who does not raise fourth amendment claims in a criminal trial "waives" those rights for all subsequent litigation. *See, e.g., Cramer v. Crutchfield,* 648 F.2d 943, 945 (4th Cir. 1981); *Blinder, Robinson & Co. Inc. v. S.E.C.,* 565 F.Supp. 74, 78 (D.Col.1983); *Palma v. Powers,* 295 F.Supp. 924, 933–37 (D.Ill.1969). This theory, however, has been soundly criticized by respected commentators, *see* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 4419 (1981); Hazard, *revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems,* 66 Cornell L.Rev. 564, 584 (1981), and it is fair to assume that the first circuit, when it decided *Fontaine,* considered and rejected this approach, choosing instead to decide the issue under the mechanism of collateral estoppel. Moreover, the Supreme Court has intimated that such a theory of fourth amendment waiver is unsupportable in the context of preclusion. *See Haring v. Prosise,* 462 U.S. 306, 320, 103 S.Ct. 2368, 2376, 76 L.Ed.2d 595 (1983).[10] Accordingly, whatever application the theory of waiver may have within the confines of the criminal proceeding, including, of course, appellate and habeas review, the effect that a litigant's conduct has in a subsequent and distinct litigation is governed by the twin doctrines of claim and issue preclusion.

Because Latraverse did not litigate the validity of the search and seizure at his criminal trial, he is not foreclosed from

raising that issue in the instant forfeiture proceeding.

The validity of the search warrant is set down for hearing on Thursday, February 11, 1988 at 9:00 a.m.

---

**10.** In *Haring,* the Court held that a guilty plea in a state court conviction does not collaterally estop a defendant from subsequently bringing a section 1983 action raising fourth amendment issues. Although the Court rested its holding upon principles other than waiver, the Court suggested that assuming, *arguendo,* that a guilty plea results in the defendant giving up his op-portunity to challenge the admissability of evidence in the criminal action, "It does not necessarily follow ... that a guilty plea is a 'waiver' of antecedent Fourth Amendment claims that may be given effect outside the confines of the criminal proceeding." 462 U.S. at 320, 103 S.Ct. at 2377.