# United States Court of Appeals
## For the First Circuit

No. 08-2444

INDIGO AMERICA, INC.,

Plaintiff, Appellee,

v.

BIG IMPRESSIONS, LLC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Stahl and Howard, Circuit Judges.

Seth H. Salinger for appellant.
Thomas W. Evans, with whom Zelle McDonough & Cohen LLP, was on
brief, for appellee.

February 24, 2010

**HOWARD**, **Circuit Judge**.  This case comes to us following the entry of default judgment against the defendant-appellant, Big Impressions, LLC.  On appeal, Big Impressions challenges, inter alia, the district court's denial of its motion to set aside an entry of default.  For the reasons that follow, we vacate the decision of the district court and remand for further proceedings.

**I.**

The seeds of this dispute were sown in 2005.  That year, Big Impressions, a printing company incorporated in Arkansas, purchased an Indigo printing press ("Indigo Press") from the plaintiff-appellee, Indigo America, Inc. ("Indigo").  In connection with this purchase, Big Impressions entered into two contracts with Indigo.  One of these contracts, titled the "Purchase and Sale Agreement," required Big Impressions to trade in two of its commercial presses as part of the purchase price.

In June 2007, Indigo filed a breach of contract action against Big Impressions in federal district court in Massachusetts. Indigo claimed that Big Impressions violated the contracts at issue by, among other things, not making two of its commercial presses available for pick up.  In due course, process was served in Arkansas on Scott Wallace, the manager and sole member of Big Impressions.

Wallace, in August 2007, filed an answer to the complaint, purportedly on behalf of the corporation.  This filing,

however, contravened the long-standing rule barring persons who are not licensed to practice law from representing corporations in judicial proceedings. In re Las Colinas Dev. Corp., 585 F.2d 7, 13 (1st Cir. 1978). Although Wallace did not purport to be a member of the bar, the court nevertheless accepted and docketed the answer, and the case proceeded unhindered.

Over the course of the next eight months, Big Impressions and Indigo engaged in settlement negotiations under the aegis of the district court's settlement program. Ultimately, however, these negotiations failed to bear fruit and, in May 2008, Indigo requested that the court default Big Impressions. The basis of its request was simple: a licensed attorney had yet to appear on behalf of Big Impressions. On that basis, the clerk of court entered default against Big Impressions.

Cross-motions ensued. Indigo filed a motion for default judgment, and Big Impressions, after securing local counsel, filed a motion to set aside the entry of default. In support of its motion, Big Impressions provided a memorandum of law, a restated answer, and an affidavit from Wallace. Through these materials, Big Impressions asserted various defenses to Indigo's breach of contract claims.

Unswayed by Big Impressions' showing, the district court denied its motion and granted Indigo's request for a default

judgment.  The district court did not issue a memorandum of opinion explaining its rulings.  Big Impressions appealed.

## II.

Big Impressions challenges both the court's denial of its motion to set aside the entry of default and the entry of a default judgment.  Different standards exist for setting aside an entry of default and for setting aside a default judgment.  Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 187 (1st Cir. 2004).  We need address only the standard for entry of default to decide this case.  See Coon v. Grenier, 867 F.2d 73, 75 n.5 (1st Cir. 1989) ("We deal only with the failure to set aside the entry of default, for it constituted the error in this case.  Plaintiff's remonstrances anent the ensuing default judgment, and the manner in which it was wrought, need not be addressed.").

Rule 55(c) provides that a court may set aside an entry of default for "good cause."  Fed. R. Civ. P. 55(c).  There is no mechanical formula for determining whether good cause exists and courts may consider a host of relevant factors.  See KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003).  The three typically considered are (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented.  Id.; Coon, 867 F.2d at 77 (noting that these three factors "comprise the indicia employed by most courts").  But that is not an exclusive list and courts may

consider other relevant factors, including "'(4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; (7) the timing of the motion [to set aside the entry of default].'" KPS & Assocs., 318 F.3d at 12 (quoting McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 503 (1st Cir. 1996)). Ultimately, the burden of demonstrating good cause lies with the party seeking to set aside the default. Id.

Our review of a district court's good cause ruling is deferential. We review the court's factual findings, if there are any, for clear error, Venegas-Hernandez, 370 F.3d at 187, and its balancing of the relevant factors for an abuse of discretion. See Conetta v. Nat'l Hair Care Ctrs., Inc., 236 F.3d 67, 75 (1st Cir. 2001); Coon, 867 F.2d at 78. Here, however, we are presented with little to review. The district court did not explain its decision or, from all that appears, make any factual findings. Without the benefit of the court's views, we proceed to examine the relevant factors ourselves. See Coon, 867 F.2d at 76-78 (analyzing the factors where there was a paucity of findings to review).

There seems to be no dispute that two of the factors cut in favor of Big Impressions. When the clerk entered default against it, Big Impressions promptly filed a motion to set aside the default. And Big Impressions argues, without objection from Indigo, that the amount of money at stake -- approximately $173,000 -- is a significant sum given its economic situation. A third

factor, the good faith of the parties, appears to be in equipoise, as neither party alleges that the other acted in bad faith. Turning to the other four factors often used, they are the subject of controversy here, and we examine them in turn.

Big Impressions claims that its default was not willful. It asserts that its principal, Wallace, believed that he had acted appropriately when he filed an answer on behalf of Big Impressions. According to Big Impressions, Wallace was simply unaware of the rule barring a person who is not licensed to practice law from representing a corporation in court. This claim finds support in the record. Wallace attested to his ignorance of the relevant rule in an affidavit.

For its part, Indigo argues that Wallace's claim of ignorance lacks credibility. Citing to Wallace's affidavit, Indigo contends that Wallace "admit[ted] that he received extensive legal advice about this matter from his Arkansas counsel." The affidavit does not support Indigo's argument, however. It addresses an entirely unrelated matter -- meetings Wallace and his attorney had with Indigo representatives in 2005 concerning the purchase of the Indigo Press.

Turning to the prejudice factor, we conclude that it too cuts in favor of Big Impressions. Simply put, we fail to see how Indigo will be prejudiced if the default is set aside. To be sure, Indigo claims that it will be prejudiced, noting that setting aside

the default would further postpone a judgment in its favor.  But, as we have noted in the past, "in the context of a Rule 55(c) motion, delay in and of itself does not constitute prejudice." KPS & Assocs., 318 F.3d at 15; see also FDIC v. Francisco Inv. Corp., 873 F.2d 474, 479 (1st Cir. 1989) (explaining that "[t]he issue is not mere delay, but rather its accompanying dangers:  loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion.").

        At the risk of lingering too long on this point, we note further that Indigo's delay-based prejudice argument falls particularly flat here because it easily could have prevented the delay.  Indigo could have moved to strike the answer or for a default judgment twenty days after Wallace was served with process, as the answer he filed, though docketed, was impermissible. See Fed. R. Civ. P. 12 (providing that a defendant must serve an answer within 20 days after being served with the summons or complaint). Instead, Indigo waited over eight months before requesting that the court default Big Impressions, even engaging Big Impressions in settlement negotiations during this time span.  Although no bad faith is suggested in Indigo's delay in seeking an entry of default here, finding prejudice under these circumstances could have the unfortunate consequence of incentivizing parties to ambush opponents on the basis of self-induced prejudice.

The next factor to be considered -- the existence (or lack thereof) of a meritorious defense -- has obvious significance in the analysis. Where no meritorious defense exists, it makes little sense to set aside the entry of default, as doing so would merely delay the inevitable. Here, Big Impressions argues that Indigo's victory in the breach of contract action is by no means foreordained and says that it asserted several meritorious defenses below, including the defenses of "prior breach of contract" and "failure of consideration." It also contends that Wallace's affidavit, submitted in support of its motion to set aside the default, sets forth allegations that could support other defenses including "fraud in the inducement."

Establishing the existence of a meritorious defense is not a particularly arduous task. "[A] party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." Coon, 867 F.2d at 77; see also Conetta, 236 F.3d at 75 (noting, in discussing the meritorious defense requirement, that the defendant had an "arguable defense on some aspects of the claims against it").

Here, Big Impressions has met its burden. In support of its "prior breach" and "failure of consideration" claims, Big Impressions submitted an affidavit in which Wallace attested that the Indigo Press did not perform as warranted. Although Indigo characterizes Wallace's testimony as lacking "evidentiary support,"

it is sufficient given that the litigation is in a pre-discovery stage.[1] Moreover, Big Impressions' fraud in the inducement[2] claim appears to be at least colorable. Wallace attested that throughout the negotiation process, Indigo employees (1) represented to him that he was only required to trade in one of his company's two presses in connection with his purchase of the Indigo Press and (2) presented him with drafts of the Purchase and Sale Agreement that reflected these representations. According to Wallace, Indigo then presented him with a Purchase and Sale Agreement that required him to trade in both presses and hurried him into signing it. While Indigo asserts that the parol evidence rule bars consideration of Wallace's various dealings with Indigo, it is well-established in Massachusetts that "'[t]he parol evidence rule does not apply when

---

[1] Indigo also says that Wallace's claim that the Indigo Press did not perform as warranted is "belated" because he failed to make this specific claim in the answer that he filed. Wallace's answer, however, denied the allegations of breach set forth in Indigo's complaint. No more was needed at the pleading stage. See Fed. R. Civ. P. 8(b)(1)(B)(providing that a party must "admit or deny the allegations asserted against it by an opposing party"); see also 5 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1268 (3d. ed. 1998) (noting, in discussing "argumentative denials," that "practitioners would be wise to limit themselves to simple denials, rather than adding additional facts by responding indirectly rather than directly").

[2] To establish fraud in the inducement at trial, Big Impressions would need to prove "the elements of common law deceit which include 'misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying.'" Commerce Bank & Trust Co. v. Hayeck, 709 N.E.2d 1122, 1127 (Mass. App. Ct. 1999) (quoting Hogan v. Riemer, 619 N.E.2d 984, 988 (Mass. App. Ct. 1993) (internal citation omitted))).

the complaining party alleges fraud in the inducement.'" Id. (quoting McEvoy Travel Bureau, Inc. v. Norton Co., 563 N.E.2d 188, 193 n.5 (Mass. 1990)).

The final factor to be considered is the nature of the defendant's explanation for the default. We again note that for several months neither Indigo nor the district court gave any indication that something was amiss; the answer had been docketed and the case was steered to the settlement program. Nevertheless, Wallace set the default in motion when he failed to apprise himself of the rule at issue. His explanation is plausible but not strong. See United States v. $23,000 in U.S. Currency, 356 F.3d 157, 164 (1st Cir. 2004) (recognizing, in the default judgment context, that "ignorance of the rules . . . do[es] not usually constitute excusable neglect") (internal quotation marks omitted)). Moreover, we also note that Arkansas, the state where Wallace's company is incorporated, permits only licensed attorneys to represent corporations in court. McAdams v. Pulaski County Circuit Court, 956 S.W.2d 869, 870 (Ark. 1997).

Having considered the relevant factors, we are left with the question of whether the district court abused its discretion in refusing to set aside the default. Because district courts are better positioned to evaluate many of the relevant factors, we are ordinarily reluctant to disturb their good cause rulings on appeal. Payne v. Brake, 439 F.3d 198, 205 (4th Cir. 2006) ("The disposition

of motions made under Rule[]55(c) . . . is a matter which lies largely within the discretion of the trial judge and his action is not lightly to be disturbed by an appellate court.") (citation omitted); see also KPS & Assocs., 318 F.3d at 12-13. Here, however, there is little reason to defer to the district court's ruling. The district court did not explain why it denied Big Impressions' motion to set aside the default, making it difficult to tell what motivated the court's decision. Although this lack of an explanation may have been inconsequential had the court's ruling been amply supported by the record, that simply is not the case here. Under circumstances such as these, and given our preference for resolving disputes on the merits, Conetta, 236 F.3d at 75, we conclude that this case should proceed further.

### III. Conclusion

For the reasons provided above, the case is remanded with directions to **vacate** the default judgment, **remove** the default, and permit the action to proceed in the normal course.

**Vacated** and **remanded**. No costs on appeal.